UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUSAN HERTZ, Individually and as Personal
Representative of the Estate of Roger B. Hertz,

                       Plaintiff,                                      Case No.  07-14369
                                                            Honorable David M. Lawson

v.

SHELDON L. MILLER, SHELDON L. MILLER &
ASSOCIATES, P.C., LAW OFFICE OF SHELDON
L. MILLER, LINDA MILLER ATKINSON, ATKINSON,
PETRUSKA, KOZMA & HART, P.C., and PHILO,
ATKINSON, STEPHENS & WRIGHT, P.C

                       Defendants.
_____/

## ORDER DENYING PLAINTIFF'S MOTION TO REINSTATE CASE WITHOUT PREJUDICE, FINDING MILLER DEFENDANTS IN CONTEMPT, AND AWARDING SANCTIONS

The case is before the Court on the plaintiff's motion to reopen the matter and the response by defendants Sheldon L. Miller, Sheldon L. Miller & Associates, P.C., and the Law Office of Sheldon L. Miller to an order to show cause.

I.

Susan Hertz, a Canadian national, brought a claim on her own behalf and on behalf of her husband, Roger Hertz, now deceased, for legal malpractice against two sets of lawyers, invoking the Court's diversity jurisdiction.  On May 31, 2004, the decedent was in a private airplane flying from Ypsilanti to Portland, Oregon, with a stop in Billings, Montana.  There was severe weather, and the pilot asked the Air Route Traffic Control facility in Lansing, Michigan to be navigated around it.  However, when the Lansing approach facility handed off the flight to the Cleveland Center, the airplane's request to avoid severe weather apparently was not communicated.  Instead, the Cleveland

controller directed the plane directly into a "level 6" thunderstorm.  Shortly thereafter, the plane crashed and all aboard, including the plaintiff's decedent, were killed.

In June 2005, the National Transportation Safety Board (NTSB) found that the air control system may have been negligent.  The plaintiff blamed the Federal Aviation Administration (FAA) and its employees, and hired the defendants (lawyers and law firms) to file suit.  The defendants filed an administrative claim against the agency on June 9, 2006.  However, under the Federal Tort Claims Act, such claims must be brought within two years of when the cause of action accrued.

The plaintiff hired new counsel to sue the FAA, but the case was dismissed by another judge of this court on April 6, 2007 for failure to comply with the statute of limitations.  This Court stayed the present lawsuit at the request of the defendants, who appealed the dismissal of the tort case.  The dismissal was affirmed on appeal.  The complaint in this case alleges legal malpractice and breach of contract against the defendants.

It appears that before engaging the defendants in the negligence action against the FAA, Susan Hertz consulted a Canadian barrister about the case.  That attorney apparently referred the case to one of the present defendants.  Defendants Sheldon L. Miller, Sheldon L. Miller & Associates, P.C., and the Law Office of Sheldon L. Miller (the Miller defendants) attempted to ascribe some fault to the Canadian barrister, and the plaintiff showed interest in joining that person in the case as an additional defendant.  Because the prospective defendant and the plaintiff both hailed from Canada, joinder of the barrister could not be achieved without destroying diversity.

Instead, the plaintiff commenced an action against all the defendants (including the barrister) in the Oakland County, Michigan circuit court, so as to gather all relevant parties in a single forum. The Miller defendants responded in that case with a motion to dismiss based on the prior federal

action. *See* Mich. Ct. R. 2.116(C)(6) (authorizing dismissal when there is "[a]nother action has been initiated between the same parties involving the same claim"). The state court denied the Miller defendants' motion, and they filed an interlocutory appeal.

Seeking to avoid the expense of litigating two cases simultaneously, the plaintiff filed a motion to dismiss the federal case without prejudice to her right to pursue the matter in state court. On February 20, 2009, the Court granted the plaintiff's motion and dismissed this case without prejudice. As part of the order, the Court directed the Miller defendants to dismiss an appeal filed in the state action. Order at 9 [dkt. #62] ("It is further **ORDERED** that the Miller defendants shall dismiss their pending appeal in the Michigan Court of Appeals from the order of the Oakland County, Michigan circuit court denying those defendants' motion for summary disposition in case number 08-091832, **on or before March 2, 2009**."). These defendants refused, and the plaintiff moved the Court to reopen the case. The Court heard argument on the motion, and the matter seemed to resolve itself when the state court of appeals denied the Miller defendants' application for leave to appeal. Nonetheless, in an order of June 4, 2009, the Court ordered the Miller defendants to show cause why they should not be held in contempt of the Court's February 20, 2009 order that they abandon their appeal in state court.

The Miller defendants then proceeded to file a further appeal in the Michigan Supreme Court. They filed a response to the show cause order asserting that the Court lacked the authority to order them to drop their appeal, because the order of this Court was essentially an exercise of supervisory authority over a state judicial proceeding, which the Supreme Court has held is improper. *See Smith v. Phillips*, 455 U.S. 209, 221 (1982); *Chandler v. Florida*, 449 U.S. 560, 570, 582-583 (1981). It has come to this Court's attention that the Michigan Supreme Court denied relief

-3-

to the Miller defendants. *See Hertz v. Miller*, 485 Mich. 928, 773 N.W.2d 720 (2009) (table). However, the plaintiff's motion to reopen the present case and the order to show cause remain open matters.

II.

"[I]t is firmly established that '[t]he power to punish for contempts is inherent in all courts.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (quoting *ex parte Robinson*, 86 U.S. (19 Wall.) 505, 510 (1873)). "[T]he objective of any contempt determination is to enforce the message that court orders and judgments are to be taken seriously." *Elec. Workers Pension Trust Fund of Local Union 58, IBEW v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 385 (6th Cir. 2003). The civil contempt power "reaches both conduct before the court and that beyond the court's confines." *Chambers*, 501 U.S. at 44. To hold a litigant in civil contempt, it must be shown by clear and convincing evidence "that 'he violated a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order.'" *Gary's Elec. Serv.*, 340 F.3d at 379 (quoting *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 591 (6th Cir. 1987)). Here, there is no dispute that the Miller defendants violated a clear and specific order of the Court requiring them to take certain actions, they knew of this Court's order, and they violated it knowingly.

The Miller defendants argue that the Court's February 20, 2009 order was improper because it constituted interference with a state proceeding. It is true that federal courts "lack supervisory powers over state court proceedings." *Byrd v. Collins*, 209 F.3d 486, 529 n.37 (6th Cir. 2000). However, a court may enjoin state proceedings to protect or effectuate its judgments. *See* 28 U.S.C. § 2283. But even that is beside the point. In this case, the Court's order did not compel action by

-4-

a court of a state, nor was it directed to the state courts.  The order did not place the Court in a supervisory role vis-à-vis the state court proceedings.  The order did not cast any doubt on the invalidity of any state court holding or procedure.  Instead, the Court ordered a litigant in a federal proceeding to take a certain step, as authorized by its power to dismiss actions "on terms that the court considers proper."  Fed. R. Civ. P. 41(a)(2).  The Court was not aggrandizing power to itself at the expense of state courts; to the contrary, the Court dismissed the federal action *so that* the state courts could decide the matter on the merits, with all relevant parties before it.  The Court's order of dismissal — which included the directive to the Miller defendants — was designed to achieve the goal of "secur[ing] the just, speedy, and inexpensive determination of [the] action" before it.  Fed. R. Civ. P. 1.  The Miller defendants have not identified any reason that the Court lacked the authority to enter its order.

But even if the Court's order was improper, "a defendant to a contempt proceeding may not challenge the validity of the underlying injunction as a defense to violating that injunction"  *Doe v. Briley*, 562 F.3d 777, 782 (6th Cir. 2009) (internal quotations omitted); *see also Liberte Capital Group, LLC v. Capwill*, 462 F.3d 543, 556 (6th Cir. 2006).  To the extent that the Miller defendants attempt to collaterally attack the order, their arguments collide directly with a long line of cases holding that a party is obligated to comply with the terms of a court order, even if such order is not valid, until the order has been set aside.  *See, e.g.*, *United States v. United Mine Workers*, 330 U.S. 258, 293 & n.58 (1947) ("an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings."); *Walker v. City of Birmingham*, 388 U.S. 307, 313-14 (1967) (noting that the defendants were precluded from attacking the court's injunction in a collateral proceeding); *Kelly v. Carr*, 691 F.2d

-5-

800, 807 n.19 (6th Cir. 1980) ("Even assuming the injunction invalid by reasons urged by appellants, until litigated and determined so by an appellate court, the appellants remain obliged to obey the court order."). The appropriate method for challenging a court order is a motion to set aside the judgment under Federal Rule of Civil Procedure 60(b), which the defendants have not filed.

The Miller defendants argue that they can still challenge the validity of the underlying order, citing *In re Providence Journal Co.*, 820 F.2d 1342 (1st Cir. 1986), which involved an injunction that operated as a prior restraint against a newspaper. The First Circuit found that the nature of the First Amendment interests involved allowed the newspaper to challenge the injunction through its defense of the contempt order. *Id.* at 1352. The court further noted that a prior restraint, no matter how temporary, "'unquestionably constitutes irreparable injury.'" *Ibid.* (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Here, in contrast, the Miller defendants' alleged injury — having to drop an appeal — does not implicate the First Amendment concerns of a prior restraint against a newspaper, and the Miller defendants faced no immediate injury approaching the magnitude of a prior restraint. Moreover, the *Providence Journal* court noted that the injunction was issued without a full and fair hearing to the newspaper — something the Miller defendants cannot claim here. *Id.* at 1351.

The Miller defendants did not seek relief from the Court's order, *see* Fed. R. Civ. P. 60(b), or ask the Court to reconsider its ruling, *see* E.D. Mich. LR 7.1(h). Nor did the Miller defendants appeal the Court's ruling, although it was their prerogative to do so. Wright & Miller, 9 Fed. Prac. & Proc. Civ. 3d § 2376 ("A defendant can appeal if the motion for voluntary dismissal is granted, since this is an adverse final judgment, but the court's discretion on these motions is broad and the defendant is not likely to obtain a reversal."). Instead, they did nothing except disobey the Court's order. One might choose to ignore the petulance of a litigant in such circumstances, especially when

-6-

the process seemed to correct itself. However, Miller is not only a litigant; he is also an attorney. If fidelity to court orders cannot be exacted from those whose livelihood is derived from dealings with courts and judges, how much less could be expected of citizens, whose respect for courts is the primary tool of orderly enforcement of orders, judgments, and decrees? "[R]espect for judicial process is a small price to pay for the civilizing hand of law." *Walker*, 388 U.S. at 321 (holding that a party may not challenge the constitutionality of an injunction by appealing a finding of contempt). The Miller defendants are clearly in contempt of the Court's February 20, 2009 order, and they have offered no justification that would excuse their noncompliance.

Finding that the Miller defendants are in contempt, the question becomes the appropriate remedy. "Broadly, the purpose of civil contempt is to coerce an individual to perform an act or to compensate an injured complainant." *United States v. Bayshore Assocs., Inc.*, 934 F.2d 1391, 1400 (6th Cir. 1991) (citing *United Mine Workers*, 330 U.S. at 303-04). "The district court has inherent authority to fashion the remedy for contumacious conduct." *Liberte Capital Group*, 462 F.3d at 557. The offending appeal has been rejected by the state appellate courts and is no longer pending. Thus, a coercive sanction is not appropriate. *See Consol. Rail Corp. v. Yashinsky*, 170 F.3d 591, 596 (6th Cir. 1999). However, an order of civil contempt may be used to "compensate for injuries caused by noncompliance." *TWM Mfg. Co., Inc. v. Dura Corp.*, 722 F.2d 1261, 1273 (6th Cir. 1983). An award of attorney's fees to compensate the plaintiff is within the Court's civil contempt powers. *See Chambers*, 501 U.S. at 45.

III.

Because the primary purpose for reinstatement of the present lawsuit has evaporated with the denial of the Miller defendants' state court motion to dismiss and the rejection of their appeals, there

is little point in reviving the present action. The plaintiff may see things differently, but if so she may apply for further relief. The Miller defendants' contumacious conduct, however, has necessitated the present motion and prolonged the present litigation for no good reason. Therefore, they must answer for their contempt.

Accordingly, it is **ORDERED** that the plaintiff's motion to reinstate the case [dkt. # 63] is **DENIED without prejudice**.

It is further **ORDERED** that defendants Sheldon L. Miller, Sheldon L. Miller & Associates, P.C., and the Law Office of Sheldon L. Miller, and each of them, are found in **CONTEMPT** of this Court's order dated February 20, 2009.

It is further **ORDERED** that **on or before February 25, 2011**, defendants Sheldon L. Miller, Sheldon L. Miller & Associates, P.C., and the Law Office of Sheldon L. Miller shall pay to the plaintiff the sum of Five Thousand ($5,000) Dollars as a sanction for their contumacious behavior and to compensate the plaintiff for suffering needlessly multiplying the proceedings. The defendants shall file a statement of compliance with the Court.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   February 11, 2011

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 11, 2011.

s/Deborah R. Tofil
DEBORAH R. TOFIL

---